**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| JENAM TECH, LLC, | |
| *Plaintiff*, | Case No. 4:19-cv-00250-ALM-KPJ |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants*. | |

**SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS
AMERICA, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A
CLAIM UNDER FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      INTRODUCTION ......................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ............................................................. 1

III.    THE ASSERTED PATENTS ........................................................................................ 2

        A.      The Technology of the Asserted Patents ........................................................... 2

        B.      Representative Claims ...................................................................................... 3

IV.     STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 3

V.      LEGAL STANDARDS ................................................................................................. 6

        A.      Patent Eligibility Under 35 U.S.C. § 101 is Properly Decided on the
                Pleadings ......................................................................................................... 6

        B.      Patent Eligible Subject Matter Under 35 U.S.C. § 101 ...................................... 7

VI.     ARGUMENT ............................................................................................................... 7

        A.      The Asserted Patents Fail at *Alice* Step-One. ....................................................... 9

        B.      The Asserted Patents Fail at *Alice* Step-Two...................................................... 13

VII.    CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
  882 F.3d 1121 (Fed. Cir. 2018)................................................................6

*Affinity Labs of Texas, LLC v. DirecTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)..........................................................7, 9, 10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014)................................................................. *passim*

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.),*
  687 F.3d 1266 (Fed. Cir. 2012)................................................................6

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018).........................................................11, 13

*Citrix Systems, Inc. v. Avi Networks, Inc.,*
  363 F.Supp.3d 511 (D. Del. Feb. 13, 2019)............................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
  776 F.3d 1343 (Fed. Cir. 2014).........................................................3, 11

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.,*
  758 F.3d 1344 (Fed. Cir. 2014)...............................................................11

*Elec. Power Group, LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016)........................................................10, 15

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016).........................................................12, 13

*Genetic Techs. Ltd. v. Merial LLC,*
  818 F.3d 1369 (Fed. Cir. 2016)................................................................6

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
  792 F.3d 1363 (Fed. Cir. 2015)...............................................................11

*Intellectual Ventures I LLC v. Erie Indem. Co.,*
  850 F.3d 1315 (Fed. Cir. 2017)...................................................9, 11, 12, 15

*Intellectual Ventures I LLC v. Symantec Corp.,*
  838 F.3d 1307 (Fed. Cir. 2016)...............................................................13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012)................................................................4, 8

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015).................................................................................................6

*TDE Petroleum Data Solutions, Inc. v. AKM Enter.*,
657 Fed. Appx. 991 (Fed. Cir. 2016)........................................................................................11

*Two-Way Media Ltd v. Comcast Cable Communs., LLC*,
874 F.3d 1329 (Fed. Cir. 2017)..............................................................................7, 10, 12, 13

*Zuili v. Google LLC*,
722 Fed. Appx. 1027 (Fed. Cir. 2018)......................................................................................12

**Statutes, Rules and Regulation**

35 U.S.C. § 101 ................................................................................................................. *passim*

37 C.F.R. 1.321 .........................................................................................................................8

Fed. R. Evid. 201(b).................................................................................................................6

Rule 12(b)(6).......................................................................................................................6, 15

## I.      INTRODUCTION

U.S. Patent Nos. 9,923,995 (the "'995 patent") and 9,923,996 (the "'996 patent") (together, the "asserted patents") are invalid under 35 U.S.C. § 101. The claims of the asserted patents are directed to the abstract idea of modifying a time period based on an exchange of information. This abstract idea is implemented within industry-standard computer architecture without meaningful modifications. Each patent discloses well-known technology, and neither of the asserted patents involves purportedly new hardware, software, or other computer technology for performing the claimed processes.

The Supreme Court and Federal Circuit have made clear that patents claiming such abstract ideas without improving the underlying computer technology are ineligible for patent protection. Furthermore, U.S. Patent Application 14/667,642 (the "'642 application"), to which both asserted patents claim priority, was rejected by the U.S. Patent and Trademark Office ("USPTO") for claiming abstract subject matter. Instead of appealing this rejection, the applicant filed nine related applications. While six of these applications (including those of both asserted patents) have been allowed, they were allowed by a different examiner.

The subject matter ineligibility determined by the USPTO for the '642 application also applies to the asserted patents, as further explained and confirmed by Federal Circuit authority on analogous software claims. Because the asserted patent claims fail to recite patent eligible subject matter, they  are invalid under Section 101.

## II.      STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the asserted patents are invalid under 35 U.S.C § 101.

1

III.     **THE ASSERTED PATENTS**

A.     **The Technology of the Asserted Patents**

The asserted patents concern the operation of computers with components ("nodes") that communicate via Transmission Control Protocol ("TCP") type communications. '995 patent at 1:39-56; '996 patent at 1:39-56. Thus, the asserted patents apply to generic computers: "[e]xemplary devices included in or otherwise providing suitable execution environments… include personal computers, notebook computers, tablet computers, servers, hand-held and other mobile devices, multiprocessor devices, distributed devices, consumer electronic devices, and/or network-enabled devices." '995 patent at 5:38-44; '996 patent at 6:8-14. TCP communications were a well-known communication protocol between networked nodes as of the priority date of the asserted patents, as described in the Background section of the asserted patents and the 1981 specification for TCP communications described in RFC 793, which is incorporated by reference by each of the asserted patents. *Id.*; *see also* '995 patent at 10:27-29; '996 patent at 10:62-63 ("Detailed information on the operation of TCP is included in RFC 793").

TCP connections between nodes in a network operate by sending information bundled in "packets" of information, which are known as TCP communications or TCP packets. '995 patent at 10:1-28; '996 at 10:36-63. These packets divide component information into separate portions of the packet, such as a header and specific data to be transferred. *Id.* The TCP packets are bundled by the sending node and processed by the receiving node. *Id.*

One discretionary aspect of the TCP connection system is the use of keep-alive options. '995 patent at 2:13-14; '996 patent at 2:13-14. A keep-alive option is a mechanism operated by individual nodes by which TCP connections are maintained for a period of time, but terminated to save resources if there has not been activity. *Id.*

2

### B.      Representative Claims

To make Section 101 motions more manageable if multiple claims of the same patent are at issue, courts have frequently treated one claim as "representative" of other "substantially similar" claims. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("addressing each claim of the asserted patents was unnecessary… all the claims are substantially similar and linked to the same abstract idea") (citations omitted).

In this lawsuit, the Complaint alleges that "at least Claim 1" of both asserted patents has been infringed. Claim 1 of each asserted patent is representative of the remaining independent claims in that patent. *See* Appendix A (comparing claim 1 of the '995 patent to each independent claim of the '995 patent); B (comparing claim 1 of the '996 patent to each independent claim of the '996 patent). Each claim of the asserted patents is directed to implementing the same abstract idea. Accordingly, for purposes of this motion, claim 1 of the '995 patent is representative of the independent claims of the '995 patent, and claim 1 of the '996 patent is representative of the independent claims of the '996 patent.

## IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   The asserted patents both claim priority to the '642 application, which was rejected in part under Section 101 for claiming abstract subject matter and abandoned. Ex. A (Office Action of '642 Application).

2.   The examiner of the applications that gave rise to the asserted patents were examined by a different patent examiner than the examiner who examined the '642 patent application. The asserted patents were not subject to any rejections during examination, except a requirement that they terminally disclaim the subject matter of U.S. Patent No. 8,219,606. Ex. B (Notice of Allowance of '995 Patent); Ex. C (Notice of Allowance of '996 Patent).

3.    The examiner who examined the asserted patents has also allowed five other patents related to the asserted patents, but has not issued a single patent rejection aside from requiring terminal disclaimers of U.S. Patent No. 8,219,606, which he allowed prior to the Supreme Court's March 12, 2012 decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) and prior to the Supreme Court's June 19, 2014 decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Ex. D (Notice of Allowance of U.S. Pat. No. 8,219,606); Ex. E (Notice of Allowance of U.S. Pat. No. 10,069,945); Ex. F (Notice of Allowance of U.S. Pat. No. 10,075,564); Ex. G (Notice of Allowance of U.S. Pat. No. 10,306,026); Ex. H (Notice of Allowance of U.S. Pat. No. 10,075,565).

4.    Three different patent examiners than the examiner who examined the asserted patents have examined patent applications related to the asserted patents, and each of these three examiners have issued rejections that ultimately led to abandoned applications. Ex. I (Office Action of U.S. Pat. Appl. 13/477,402); Ex. J (Office Action of U.S. Pat. Appl. 13/941,502); Ex. A (Office Action of '642 Application).

5.    The asserted patents incorporate by reference "'Request for Comments' (RFC) document RFC 793 edited by John Postel, titled 'Transmission Control Protocol, DARPA Internet Program Internet Protocol Specification' (September 1981)" (hereinafter, "RFC 793"). '995 patent at 1:46-51; '996 patent at 1:46-51.

6.    The asserted patents admit that RFC 793 describes "the TCP specification." '995 patent at 1:46; '996 patent at 1:46.

7.    The asserted patents admit, in their Background sections, that there are "critics" and [p]roponents" of "the keep-alive option" wherein "the TCP keep-alive option is supported by a number of implementations of the TCP" and "[o]ne, both, or neither node including an endpoint

4

in a TCP connection may support a keep-alive option for the connection." '995 patent at 1:43-2:12; '996 patent at 1:43-2:12.

8.   The asserted patents admit, in their Background sections, that "TCP keep-alive and the debate of its benefits and faults have been around for decades." '995 patent at 2:13-14; '996 patent at 2:13-14.

9.   Asserted claim 1 of the '995 patent recites:

> An apparatus comprising:
>
> > a non-transitory memory storing instructions; and
> >
> > one or more processors in communication with the non-transitory memory, wherein the one or more processors execute the instructions for:
> >
> > > receiving, by a second node from a first node, a transmission control protocol (TCP)-variant packet in advance of a TCP-variant connection being established;
> > >
> > > detecting an idle time period parameter field in the TCP-variant packet;
> > >
> > > identifying metadata in the idle time period parameter field for an idle time period and, during which, no packet is communicated in the TCP-variant connection to keep the TCP-variant connection active; and
> > >
> > > modifying, by the second node and based on the metadata, a timeout attribute associated with the TCP-variant connection.

10.   Asserted claim 1 of the '996 patent recites:

> An apparatus comprising:
>
> > a non-transitory memory storing a network application; and
> >
> > one or more processors in communication with the non-transitory memory, wherein the one or more processors execute the network application such that the network application is configured to operate in accordance with a first protocol including a transmission control protocol (TCP), the apparatus, when operating in accordance with the first protocol to establish a TCP connection, configured to:
> >
> > > communicate a segment including at least one first synchronize bit;
> > >
> > > communicate a first acknowledgement of the segment, and at least one second synchronize bit; and
> > >
> > > communicate a second acknowledgement;

5

wherein the network application is further configured to operate in accordance with a second protocol that is separate from the TCP, the apparatus, when operating in accordance with the second protocol to establish a second protocol connection, configured to:

> receive, by a second node from a first node, a packet;

> detect an idle time period parameter field in the packet;

> identify metadata in the idle time period parameter field for an idle time period, where, after the idle time period is detected, the second protocol connection is deemed inactive; and

> create or modify, by the second node and based on the metadata, a timeout attribute associated with the second protocol connection.

## V.     LEGAL STANDARDS

### A.     Patent Eligibility Under 35 U.S.C. § 101 is Properly Decided on the Pleadings

Patent eligibility under Section 101 is an issue of law that is properly and frequently decided "on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial LLC,* 818 F.3d 1369, 1373-74 (Fed. Cir. 2016). An evaluation of subject matter eligibility does not require claim construction. *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (claim construction is not a prerequisite for ruling on a Section 101 motion if the Court has a "full understanding of the basic character of the claimed subject matter").

Evidence properly considered when determining patent eligibility at the motion to dismiss stage includes "the complaint, the patent, and materials subject to judicial notice." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Thus, the Court may properly take judicial notice of facts "not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," such as the prosecution history of the patents and other government records. *See* Fed. R. Evid. 201(b); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) (considering "the prosecution history" when affirming a dismissal under Rule 12(b)(6)).

### B.      Patent Eligible Subject Matter Under 35 U.S.C. § 101

A two-step inquiry is used to determine whether patent claims fall outside of the patent eligibility conferred by Section 101. *Alice*, 573 U.S. at 217.

#### 1.      The Alice *Step-One Framework*

At step-one, the Court must determine "whether the claims at issue are directed to [] patent-ineligible concepts." *Alice*, 573 U.S. at 217. To do so, the Court should look past specific claim limitations—the focus of the second step—and identify "[t]he idea underlying the inventions." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1260 (Fed. Cir. 2016). A claim that is directed to a patent-ineligible concept, such as abstract ideas, fails at this first step. *Alice*, 573 U.S. at 217. "Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Two-Way Media Ltd v. Comcast Cable Communs., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

#### 2.      The Alice *Step-Two Framework*

If a patent is directed to an abstract idea, then it must add an "inventive concept" to be patent eligible. *Alice*, 573 U.S. at 217. That is, it must add one or more limitations "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 225 (citation omitted). These "additional features" must be more than "well-understood, routine, conventional activities previously known to the industry." *Id.* "[W]holly generic computer implementation" of abstract ideas fail to provide any additional inventive concept. *Alice*, 573 U.S. at 223.

## VI.    ARGUMENT

The claims of the asserted patents fail at both stages of the *Alice* analysis because they are directed to the abstract idea of modifying a time period based on an exchange of information. Because this abstract idea is implemented within existing and common TCP architecture, the claims also do not provide any inventive concepts. That the claims are abstract and lack

7

inventive concept is plain from the claims themselves and from the specification of the asserted patents.

Furthermore, the USPTO has already determined that the application to which the asserted patents claim priority was patent ineligible under Section 101. Ex. A (Office Action of '642 Application). The applicant did not appeal this rejection, but instead sidestepped substantive resolution of this problem by filing nine other applications that claim priority to the '642 application (including those that issued into the asserted patents), and abandoning the '642 application.

Indeed, it is noteworthy that *three* patent examiners at the USPTO, including the examiner of the '642 application, have examined applications in this family and issued rejections that ultimately led to abandoned applications. *See* Exs. A, I-J (office actions rejecting these applications). However, a fourth examiner has allowed six continuations of the '642 application (including the asserted patents) with no requirements other than that the patentee terminally disclaim[1] a parent application to the '642 application that he had allowed prior to the Supreme Court's *Mayo* and *Alice* decisions and without even preliminary rejections. *See* Exs. B-C, E-H (notices of allowance of these six applications); Ex. D (notice of allowance of the parent application).

Thus, while each patent is entitled to a presumption of validity, the telling family history of the asserted patents and the clear guidance of the Federal Circuit show that the asserted patents fail to claim patent eligible subject matter.

---

[1] A terminal disclaimer is a notice signed and submitted by a patentee that disclaims any patent term that extends beyond the expiration of an earlier related patent. *See* 37 C.F.R. 1.321.

A.      **The Asserted Patents Fail at *Alice* Step-One.**

The asserted patents fail at the first step of the *Alice* analysis because they are directed to the abstract idea of modifying a time period based on an exchange of information.

The core idea of the alleged invention is, generally, "sharing information for detecting an idle TCP connection." '995 Patent at 2:22-23, title; '996 patent at 2:22-23, title. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) (using what "the patent itself observes" to determine the abstract idea of the patent).

While the precise wording varies slightly among the claims, each representative claim describes some combination of the following general information processing protocol: (1) delivering or receiving a packet of information, (2) identifying metadata within that packet of information, and (3) acting upon that metadata. *Cf. Affinity Labs*, 838 F.3d at 1258 (similarly summarizing the "three functions" performed by the claimed software).

For example, the claims of the asserted patents are each directed to the same protocol:

- *receiving, by a second node from a first node, a transmission control protocol (TCP)-variant packet in advance of a TCP-variant connection being established;* [***i.e.*, delivering or receiving a packet of information**]

- *detecting an idle time period parameter field in the TCP-variant packet; identifying metadata in the idle time period parameter field for an idle time period and, during which, no packet is communicated in the TCP-variant connection to keep the TCP-variant connection active;* [***i.e.*, identifying metadata within that packet of information**]

- *modifying, by the second node and based on the metadata, a timeout attribute associated with the TCP-variant connection* [***i.e.*, acting upon that metadata**]

'995 patent at 23:9-21;

- *receive, by a second node from a first node, a packet;* [***i.e.*, delivering or receiving a packet of information**]

- *detect an idle time period parameter field in the packet; identify metadata in the idle time period parameter field for an idle time period, where, after*

> *the idle time period is detected, the second protocol connection is deemed inactive;* [***i.e.**, **identifying metadata within that packet of information**]*

> - *create or modify, by the second node and based on the metadata, a timeout attribute associated with the second protocol connection* [***i.e.,** **acting upon that metadata**]*

'996 patent at 23:48-56.

These three steps, implemented for "sharing information for detecting an idle TCP connection" ('995 Patent at 2:22-23, title; '996 patent at 2:22-23, title), demonstrate that the asserted patents are directed to a single abstract idea: modifying a time period based on an exchange of information.[2] This abstract idea is not unlike the abstract idea directed to transmitting message packets found in *Two-Way Media*: "(1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information." 874 F.3d at 1337. This abstract idea is also similar to that found by the examiner of the '642 application: "receiving, monitoring, and analyzing/comparing data, followed by identifying the compared data." Ex. A (Office Action of '642 Application). And this abstract idea is also strikingly similar to an abstract idea found to be invalid in *Citrix Systems, Inc. v. Avi Networks, Inc.*, 363 F.Supp.3d 511, 521-22 (D. Del. Feb. 13, 2019): "using a dynamic response time to determine availability" of network services on a server.

Indeed, the Federal Circuit has ***repeatedly*** warned that "[i]nformation… is an intangible," and that claims directed to the collection, manipulation, or processing of data are "within the realm of abstract ideas." *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir.

---

[2] The additional limitations contained within the asserted patents merely address the specifics of implementation of this protocol but do not affect the idea to which claims are directed. Accordingly, they will only be addressed by this motion in the context of finding any additional "inventive concept." *See Affinity Labs*, 838 F.3d at 1260 (determining that "additional limitations" do not affect the abstract idea, and thus that they should "be considered only in the second step of the *Alice* analysis").

2016); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (software that directs "considering historical usage information while inputting data" is abstract); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("an index used to search and retrieve information stored in a database is similarly abstract"); *TDE Petroleum Data Solutions, Inc. v. AKM Enter.*, 657 Fed. Appx. 991, 993 (Fed. Cir. 2016) ("data gathering and processing" is abstract); *Content Extraction*, 776 F.3d at 1347 (collecting, recognizing, and storing data is abstract); *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("gathering and combining data" is abstract).

As a real-world analogy to show a non-computer implementation of this abstract idea, the modifying of a time period based on an exchange of information is analogous to the process of restaurants communicating information about their late-arrival policies for reservations. For example, a restaurant (analogous to the claimed first node) may communicate to a prospective diner (analogous to the second node) according to some established communication network (such as via text message or email) that there is a 15-minute policy after which, if the prospective diner has not arrived or called, the reservation will be released. The prospective diner will then receive that information, recognize the 15-minute policy, and know to arrive or call within that 15-minute window if they wish to keep the reservation open.   Similarly, the claims of the asserted patents recite a protocol whereby information is sent from one node to another node to direct that other node to modify the time parameters for its timeout period.

The specific TCP implementation context of the claimed "protocol" ('995 patent at 23:36; '996 patent at 23:47) does not transform the abstract subject matter recited by the claims into non-abstract subject matter. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("[a]n abstract idea does not become nonabstract by limiting

the invention to a particular field of use or technological environment"). For example, specifying

that information is to be communicated via TCP communications between nodes merely defines

the implementation context, but does not change the abstract idea to which the claims are

directed. *See Erie Indem.*, 850 F.3d at 1328 ("merely using XML tags—as opposed to other

kinds of tags—to build an index is still abstract").

While software "can make non-abstract improvements to computer technology just as

hardware improvements can," this exception is not infinite, and not all software is patent eligible.

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Any improvements to

computer functionality that the asserted patents purport to create are merely the result of an

abstract idea being implemented on generic computer functionality, but these improvements are

not akin to new hardware and are not sufficient to render the claims patent eligible. *See Two-Way

Media*, 874 F.3d at 1338 ("[a]t best, the [claims encompass] the use of generic computer

components to carry out the recited abstract idea, but that is not sufficient."); *Zuili v. Google

LLC*, 722 Fed. Appx. 1027, 1030 (Fed. Cir. 2018) (utilizing "generic computer components

performing conventional activities" does not direct a claim to non-abstract subject matter).

For instance, the asserted patents do not purport to have invented the usage of TCP

timeout parameters—they admit that "TCP keep-alive and the debate of its benefits and faults

have been around for decades." '995 patent at 2:13-14; '996 patent at 2:13-14. The asserted

patents also do not purport to have invented a multi-node network wherein the nodes

communicate via TCP communications—they incorporate by reference "the TCP specification"

and admit that the industry has "critics" and [p]roponents" of multi-node systems with a TCP

connection that "support a keep-alive option for the connection." '995 patent at 1:43-2:12; '996

patent at 1:43-2:12. Finally, the asserted patents admit that "[t]hose skilled in the art will

recognize" that TCP communications can be modified in view of RFC 793, so that metadata "may have other suitable formats and may be included in a TCP packet in structures and locations other than those specified for TCP options in RFC 793." '995 patent at 14:51-54; '996 patent at 15:16-19. The adaptation of the TCP specification from RFC 793 by the asserted patents is further made explicit in their figures, such as Figure 8, which notes that "Figures are adapted from RFC 793." '995 patent at Fig. 8; '996 patent at Fig. 8.

Thus, the asserted patents admit that they have not invented the core hardware or software processes involved in the claimed invention, and thus are not directed to an improvement in underlying computer functionality. *Cf. Enfish*, 822 F.3d at 1335 (wherein the invention was directed to a novel "self-referential table"). Instead, the asserted patents merely propose adapting the existing TCP architecture in a straightforward manner to implement the abstract idea of modifying a time period based on an exchange of information. *See BSG Tech*, 899 F.3d at 1288 ("These benefits, however, are not improvements to database functionality. Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure."). Accordingly, the asserted patents fail at *Alice* step-one.

### B.      The Asserted Patents Fail at *Alice* Step-Two.

The asserted patents fail to provide any additional "inventive concept," and thus also fail at step-two. *Alice*, 573 U.S. at 225. The claims merely specify the use of well-known, industry-standard TCP protocols in exactly the way that these protocols were *meant* to be used. Accordingly, nothing in the claims of the asserted patents "requires anything other than conventional computer and network components operating according to their ordinary functions." *Two-Way Media*, 874 F.3d at 1339 (citing *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319-21 (Fed. Cir. 2016)); *Alice*, 573 U.S. at 223 ("wholly generic computer implementation" of abstract ideas fails to provide any inventive concept).

13

As discussed above for *Alice* step-one, the asserted patents admit that TCP timeout parameters and multi-node networks where the nodes communicate via TCP communications were well-known within the art. *See* '995 patent at 1:43-2:14; '996 patent at 1:43-2:14. Thus, claim limitations directed to generic TCP-based network components and activities, such as "a non-transitory memory" storing an application or instructions, "one or more processors in communication with the non-transitory memory," and the TCP protocols themselves do not provide any inventive concept, as they were well-known. Indeed, these are standard components of the "personal computers, notebook computers, tablet computers, servers, hand-held and other mobile devices, multiprocessor devices, distributed devices, consumer electronic devices, and/or network-enabled devices" that are the "suitable execution environments" for the protocols of the asserted patents. '995 patent at 5:38-44; '996 patent at 6:8-14.

Likewise, the asserted patents admit that RFC 793 "describes a 'three-way handshake' for establishing a TCP connection." '995 patent at 13:45-59; '996 patent at 14:12-26 (noting that the process is also known as the "three message" handshake). Thus, the use of this handshake, as recited by the claims of the '996 patent ("communicate a segment including at least one first synchronize bit; communicate a first acknowledgement of the segment, and at least one second synchronize bit; and communicate a second acknowledgement") ('996 patent at cl. 1), does not provide an inventive concept because this handshake is well-known and merely used to "establish a TCP connection," exactly as its purpose is described by RFC 793. '996 patent at 14:12-26; *see also, id.* at 1:46 (admitting that RFC 793 describes "the TCP specification").

Finally, the usage of TCP-type commands containing an "idle time period parameter field" comprising "metadata" is not an inventive concept. The asserted patents admit that "[t]hose skilled in the art will recognize" that TCP communications can be modified in view of

14

RFC 793, so that metadata "may be included in a TCP packet in structures and locations other than those specified for TCP options in RFC 793." '995 patent at 14:51-54; '996 patent at 15:16-19. Thus, providing a specific data packet configuration consistent with the TCP protocol does not supply an inventive concept, regardless of the asserted patents' usage of language such as "TCP-variant packet" to describe this concept, as the underlying subject matter remains within the scope of the TCP protocol.

As with *Alice* step-one, simply tying an abstract idea to "a particular technological environment" or field of use is not inventive. *Alice,* 573 U.S. at 226; *Elec. Power Group*, 830 F. 3d at 1354 (determining at *Alice* step-two that "limiting the claims to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core"). Thus, the use of specific forms of metadata such as TCP communications will not render a claim patent eligible if those metadata forms and processes are "well-known." *See Erie Indem.*, 850 F.3d 1328-29 ("the recitation of an index employing XML tags to navigate a computerized database is simply not enough to transform the patent-ineligible abstract idea here into a patent-eligible invention").

Accordingly, the asserted patents do not provide any new "inventive concept" but merely utilize existing TCP architecture and framework to implement the abstract idea of modifying a time period based on an exchange of information. Accordingly, the claims of the asserted patents also fail at *Alice* step-two and are consequently invalid. *Alice*, 573 U.S. at 225.

## VII.   CONCLUSION

Because the asserted patents are invalid for claiming abstract subject matter, Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc. respectfully requests that this Court grant their motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Dated: August 12, 2019                     By:   _/s/ Jamie B. Beaber_

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gilliamsmithlaw.com

Jamie B. Beaber
Baldine B. Paul
Tiffany A. Miller
Saqib J. Siddiqui
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
bpaul@mayerbrown.com
tmiller@mayerbrown.com
ssiddiqui@mayerbrown.com

Robert G. Pluta
Amanda Streff Bonner
**MAYER BROWN LLP**
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
rpluta@mayerbrown.com
asbonner@mayerbrown.com

*Counsel for Defendants*
*Samsung Electronics Co. Ltd. and*
*Samsung Electronics America, Inc.*

16

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 12th day of August, 2019, with a copy of this document via electronic mail pursuant to Local Rule CV-5(d).

*/s/ Melissa R. Smith*
Melissa R. Smith